UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-387-GWU

MITCHELL MIDDLETON,                                                 PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

07-387  Mitchell Middleton

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however,

Case: 6:07-cv-00387-GWU   Doc #: 14   Filed: 08/20/08   Page: 4 of 11 - Page ID#: 91

07-387  Mitchell Middleton

merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mitchell Middleton, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, illiteracy, a mood disorder, and an adjustment disorder. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Middleton retained the residual functional capacity to perform jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-6).

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 31, and work experience as a laborer, security guard, and mechanic's helper could perform any jobs if he were limited to occasionally lifting no more than 30 to 40 pounds, and also had the following non-exertional

restrictions. (Tr. 516). He: (1) needed to avoid vibrations or climbing ladders, ropes, and scaffolds; (2) could occasionally bend, twist, stoop, crouch, and crawl; (3) was functionally illiterate; and (4) was limited to simple tasks with moderate limitations in carrying out detailed instructions, maintaining extended attention and concentration, responding appropriately to routine changes in the work setting, and in his ability to travel in unfamiliar places or use public transportation. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 517).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The plaintiff alleged disability due to problems with his back and asthma. (Tr. 62).[1] He stated that he had injured his back in April, 2005 and that Dr. James Bean eventually performed a discectomy in October, 2005, but he continued to have low back and leg pain. (Tr. 495-6). Due to his back discomfort, he was unable to lift and had to spend the day alternating positions frequently and sometimes needed help to get dressed. (Tr. 502-3). However, he testified that he felt he could do his old job as a security guard if it did not require him to walk and he could stretch out

---

[1] No evidence concerning asthma was submitted and the ALJ properly did not find it to be a "severe" impairment.

occasionally.  (Tr. 504).  He had recently started counseling at the Comprehensive Care Center (CCC) for depression and anxiety, because he was having a hard time not working.  (Tr. 499-500, 513).  The medication that he had been prescribed provided "pretty decent" help.  (Tr. 512).

The ALJ's functional capacity finding was consistent with the opinion of Mr. Middleton's treating neurosurgeon, Dr. James Bean, who performed the aforementioned discectomy and closely followed his attempted rehabilitation and physical therapy.  Dr. Bean noted that by March, 2006, the plaintiff had been able to lift up to 40 pounds in physical therapy.  (Tr. 186-7, 359).  Although Dr. Bean hoped to continue therapy to increase Mr. Middleton's safe lifting level, further physical therapy was not approved, and a follow-up MRI showed degenerative disc disease without evidence of recurrent disc hernation.  (Tr. 357-9).  Dr. Bean opined at this point, in June, 2006, that Mr. Middleton had reached maximum medical improvement and that he should be limited to light physical activity with occasional bending, twisting, and stooping, and without having to lift beyond a maximum of 30 to 40 pounds on occasion.  (Tr. 357).  The ALJ incorporated the specific weight-lifting restriction and the non-exertional restrictions in the hypothetical question. Since Dr. Bean was the only treating source to give an opinion, the ALJ was certainly justified in following his proposed restrictions.

07-387 Mitchell Middleton

The hypothetical physical factors are also supported by the opinion of a one-time examiner, Neurosurgeon Henry Tutt, who examined the plaintiff in April, 2006 and opined that he could return to his past work duty with the only restriction being a requirement to utilize appropriate body mechanics when performing heavy lifting. (Tr. 344-7, 424). A state agency physician who reviewed the evidence, Dr. John Rawlings, also provided non-exertional restrictions consistent with the ALJ's findings, although he limited the plaintiff to "light" level exertion. (Tr. 410-17). The ALJ could reasonably have given greater weight to the specific citation of 30 to 40 pounds by the treating source, however.

Dr. David Muffly, an orthopedic surgeon, also examined the plaintiff on one occasion, concluding that he could only occasionally lift and carry 15 pounds, could sit, stand, and walk three hours each in an eight-hour day (no more than 30 minutes without interruption), could occasionally bend, squat, and reach above shoulder level, could not crawl or climb or use his feet for repetitive movements, would have a moderate restriction in his ability to drive automobile equipment, and a mild restriction on his ability to work at unprotected heights. (Tr. 342). Given these restrictions, the VE testified that there were jobs that the plaintiff could perform. (Tr. 517-18).[2]

---

[2] Dr. Muffly did state in his narrative report that he thought the plaintiff would need to lie down at unspecified intervals to "obtain relief," but did not repeat this opinion on his formal functional capacity assessment form. (Tr. 341). Since Dr. Muffly's opinion as a

Since no treating or examining source identified restrictions that would prevent the plaintiff from working, this portion of the decision is supported by substantial evidence.  The plaintiff argues that the ALJ improperly considered his subjective complaint of pain under the standard set out in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).  An examination of the ALJ's decision shows, however, that the ALJ considered the issue in reasonable detail.  (Tr. 24).

From a mental standpoint, the plaintiff sought treatment from the CCC beginning in May, 2006, and the staff psychiatrist, Dr. S. Raza, diagnosed a mood disorder due to general medical conditions and an adjustment disorder with mixed features of anxiety and depression.  (Tr. 372, 376).  Dr. Raza assigned a Global Assessment of Functioning (GAF) score of 65, reflecting only "mild" symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  Mr. Middleton was started on medication and advised to see his counselor on a regular basis.  The medication dosage was increased in August, but no specific functional restrictions were ever given by this source.  (Tr. 369).

A psychologist, Phil Pack, evaluated Mr. Middleton in May, 2006, at which time the plaintiff described symptoms of depression and anxiety along with difficulty

---

one-time examiner was not entitled to controlling weight, it is a moot point whether he intended to include this restriction or not.

to adjusting to not being active. (Tr. 350). However, Mr. Pack described the plaintiff as being friendly, pleasant, talkative, and exhibiting a broad range of affect. (Id.). Mr. Middleton stated that he had been in Special Education and quit school in ninth grade without ever being able to learn to read. (Tr. 351). He described being irritable but would drive on a regular basis, watch TV, and liked to work puzzles. Objective testing administered by Mr. Pack showed a full scale IQ score of 71 and a first grade reading ability with no signs of malingering. (Tr. 352).[3] Mr. Pack diagnosed a depressive disorder and a pain disorder without psychological symptoms, but commented that he did not have a history of mental retardation. Mr. Pack concluded that the plaintiff would have a "poor" ability to follow written instructions, a "fair" ability to perform repetitive tasks although there might be disruption as a result of his physical complaints, and a "fair" ability to adapt and to understand, retain, and follow oral instructions. (Tr. 354). These limitations are generally consistent with the hypothetical question.

A state agency psychologist, Dr. Lea Perritt, reviewed the evidence and concluded that the plaintiff would be "moderately limited" in his ability to understand, retain, and carry out detailed instructions, maintain attention and concentration,

---

[3]School records included in the transcript included IQ testing showing a full scale IQ of 68 at the age of 13. (Tr. 108). The plaintiff does not suggest that the Commissioner's Listing of Impairment 12.05C should apply to his case. Since his lowest valid IQ score as an adult was 71, he does not meet the requirements of the Listing. Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001).

07-387  Mitchell Middleton

respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation.  (Tr. 406-8).  These specific limitations were adopted by the ALJ and given in the hypothetical question.

Subsequently, Dr. Barbara Belew, another psychologist, evaluated Mr. Middleton, reviewed the CCC records, and obtained some objective testing showing IQ scores on the Wechsler Abbreviated Scale of Intelligence in the borderline to very low range and reading skills also in the very low range.  (Tr. 457).  Her observations showed that he exhibited symptoms associated with anxiety and depression, consistent with Dr. Raza's diagnosis.  (Tr. 459).  Dr. Belew opined that Mr. Middleton would have a "seriously limited but not precluded" ability to deal with work stresses, understand, remember, and carry out detailed and complex job instructions and somewhere between a "limited but satisfactory" and "seriously limited but not precluded" ability to relate to coworkers and deal with the public.  (Tr. 465-7).  The ALJ noted, however, that there were some inconsistencies in Dr. Belew's report (Tr. 22), and declined to accept her restrictions.  A psychiatrist, Dr. Douglas Ruth, also examined Mr. Middleton for Worker's Compensation purposes but did not specifically address functional limitations, although he assigned a two percent impairment rating.  (Tr. 469-77).

The plaintiff does not make any specific objections on appeal to the ALJ's choice of mental restrictions, but the ALJ could have reasonably relied on the

07-387 Mitchell Middleton

opinion of Dr. Rawlings, which is, in turn, certainly consistent with both Mr. Pack's conclusions as well as the treating psychiatrist's opinion that the plaintiff's mental symptoms were only in the "mild" range.

The decision will be affirmed.

This the 20th day of August, 2008.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**